# D. A. PALMQUIST, Respondent, v. THE MINE AND SMELTER SUPPLY COMPANY, a Corporation, Appellant.

### No. 1382.   (70 Pac. 994.)

1. **Master and Servant: Injury to Servant: Sufficiency of Evidence: Review of Verdict: Excessive Damages.**
   A verdict for damages for personal injuries will not be disturbed, either because the damages are excessive or for insufficiency of evidence, if there is any evidence to support the verdict.[1]

2. **Same: Evidence Held Sufficient.**
   Evidence in an action by an employee of a mine and smelter supply house for injuries received in the moving of a boiler examined, and *held* sufficient to support a verdict for plaintiff.

3. **Same: Exceptions: Sufficiency.**
   Exceptions to instructions taken simply by reference to the number of each paragraph, without attempting to point out specifically the objectionable portion, amount simply to a wholesale exception to the entire charge, and are insufficient to warrant the review of any particular portion.[2]

4. **Same: Instruction: Proper.**
   In an action by a servant for personal injuries, which were of a serious and permanent character, it is proper to instruct that, if the plaintiff has not yet recovered from the injury, or has been, to any extent, permanently disabled, the jury should take such facts into consideration in estimating damages.

5. **Same: Exception Not Available: Too General.**
   In an action by a servant for personal injuries, an exception to an instruction that it is the duty of the employer to provide reasonably suitable means and appliances, etc., and a suitable and reasonably safe place to work, that it fails to qualify such duty with the words "use ordinary care," is not available under a general exception to the charge, where the attention of the court below was not called to the defect.

---

[1]Braegger v. Railroad Co., 24 Utah 391, 68 Pac. 140.
[2]Nebeker v. Harvey, 21 Utah 363, 374, 60 Pac. 1029.

25 Utah—17

6. **Same: Expert Evidence: Relevancy.**
In an action for personal injuries by an employee, received in moving a boiler, where negligence is alleged in failing to supply a proper apparatus, expert evidence concerning the proper method of loading boilers, and the appliances commonly used therefor, is material.

7. **Same: Hypothetical Question.**
Hypothetical questions to an expert witness may be framed either upon all the facts in the case or upon any part of the facts assumed to be true, which is sufficient in itself.[a]

(Decided December 26, 1902.)

Appeal from Third District Court, Salt Lake County.— *Hon. C. W. Morse,* Judge.

Action to recover damages for personal injuries alleged to have been received because of the negligence of the defendant company. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Stephens & Smith* and *Ashby Snow, Esq.,* for appellant.

*Messrs. Powers, Straup & Lippman,* for respondent.

STATEMENT OF FACTS.

This action was brought to recover damages for personal injuries alleged to have been received because of the negligence of the defendant company. It appears from the record that the plaintiff, who was about thirty years of age, was, at the time of the accident which resulted in the injuries sued for, an employee of the defendant in its shipping department on

---

[a]See Nichols v. Railroad Co., 25 Utah 240, 70 Pac. 996.

West Temple street, Salt Lake City; the defendant being engaged in the business of handling mine and smelter supplies, machinery, engines, and boilers. On the morning of October 19, 1900, the plaintiff was ordered by the managing agent of the company to go to its warehouse on Fifth West street, where it kept its large boilers and heavy machinery, and assist in loading a boiler on a wagon for the purpose of hauling it to the Oregon Short Line railroad depot. One Peterson was in charge of and directed the manner of loading, and the plaintiff and another employee were to assist him. The boiler weighed six tons, and was upon a trestle alongside the warehouse. Peterson then drove a platform wagon to within ten feet of the trestle, there being a railroad track between the wagon and trestle, and, under his directions, iron rails were laid, one end of each resting on the trestle and the other end on the wagonbed, both ends being fastened, and the trestle being about six or twelve inches lower than the top of the wagonbed. Unable to move the boiler with crowbars, Peterson next fastened a rope with block and tackle around the north end of the boiler, and with a horse pulled that end onto the wagon. He next attached his tackle to the south end of the boiler to pull that end up also. As to what was then directed by Peterson, and done, the evidence is conflicting. From the testimony of the plaintiff it appears that Peterson, having attached his tackle in the south end instructed plaintiff to go behind the boiler and nail a block on the wagon to keep the boiler from slipping; that Peterson was standing by the horse, and had hold of the lines; that the block was lying between the wagon and the trestle, and to get which the plaintiff passed around the north end of the wagon, the north end of the boiler then resting on about the center of the wagon; that he stooped over to throw a crowbar off from the block for the purpose of picking up the block to nail it on the wagon; that, as he was thus stooping down, Peterson started the horse to pull the boiler on the wagon without giving any warning; and that as quick as the plaintiff heard

Peterson say "Get up!" he tried to jump back, but the boiler fell, and caught him, and inflicted the injuries.     From the testimony of the defense it appears that when Peterson started to pull on the south end, he having blocked the north end, the plaintiff was standing beyond the south end of the boiler, and entirely out of danger; that he gave him no direction, except to watch the block, and, if it slipped, to call to him to stop the horse; that plaintiff could see the block from where he stood out of danger; that when he started up the team the boiler slipped and fell; and that he did not see the plaintiff until the boiler fell, when he was found, under the north end of it, jammed up against the trestle.     The evidence shows clearly that the plaintiff was severely and permanently injured.     The complaint charges negligence against the company upon two grounds:     First, that proper apparatus and appliances were not provided; and, second, that Peterson started to pull the boiler without warning the plaintiff.     The jury returned a verdict in the sum of $10,000 damages, and, a motion for a new trial having been overruled, the defendant prosecuted this appeal.

BARTCH, J., after stating the case as above, delivered the opinion of the court.

The appellant insists that the damages are excessive, and were awarded under the influence of passion or prejudice, and that the evidence is insufficient to justify the verdict. The questions here presented have, on numerous occasions, been before this court, and our uniform holding has been that, if there is any evidence to support the verdict, we are powerless to disturb it.     In Braegger v. Railroad Co., 24 Utah 391, 68 Pac. 140, they were answered as follows:     "The appellant complains that the verdict appears to be excessive, and given under the influence of passion or prejudice, and is not justified by the evidence.     The answer to this is that under our Constitution the amount of the verdict is a matter entirely within the province of the trial

court and jury, the same being a question of fact. If there is any evidence to support the verdict, this court has no power to pass upon it, or to set the verdict aside as being excessive." That there is proof in this record which supports the verdict is too clear for argument.

It is also insisted that the court erred in its charge on the question of damages, where, among other things, the jury were instructed that in case they found from the evidence that the plaintiff had not yet recovered from the effects of the injury, or that thereby he had to any extent been permanently disabled, then they should take such facts into consideration in estimating his damages. Complaint is likewise made respecting the charge, wherein, *inter alia*, the court instructed the jury that "it is the duty of an employer to provide reasonably suitable means and appliances to enable the employee to do his work as safely as the hazard incident to the employment will permit, and to provide a suitable and reasonably safe place for doing the work to be performed." The answer to these points must be that there was no exception taken to any portion of the charge which raises any question for our consideration. We have repeatedly held that, in taking an exception to a charge, the objectionable portion must be pointed out, so as to afford the court an opportunity to make a correction, and thus avoid the expense of a new trial. In this case the exceptions were taken simply by reference to the number of each paragraph, except the first, without even an attempt to point out, for correction, a single word, phrase, or sentence. This amounted simply to a wholesale exception to the entire charge, and can not avail the appellant in this court. In Nebeker v. Harvey, 21 Utah 363, 374, 60 Pac. 1029, where the exceptions to the charge were taken in a similar manner, it was said: "Numerous other errors, relating to the charge of the court, were assigned, but, in the absence of proper exceptions, we can not consider them. The exceptions are too general, simply referring to whole paragraphs of the charge. To be of avail in an appellate court,

they must specify the particular objectionable matter, so as to give the trial judge an opportunity to make a correction, notwithstanding that it is provided in section 3151, Revised Statutes, that 'no reason need be given for such exceptions.' That section does not authorize the making of wholesale exceptions without reference to the specific matter which is claimed to be objectionable. The reason of the rule which requires the specific objectionable matter to be pointed out in the presence of the jury is obvious. If the objection to such matter be well taken, the court may then make the correction called for, and thus not only save the expense of another trial but also the time of the court. The rule has been firmly established in this State." An examination of the portion of the charge, however, upon the subject of assessment of damages, in the light of the facts proven, shows it to be substantially correct, and, as to the instruction above referred to, relating to the duty of the employer in providing suitable means and appliances and a safe place to work, the only objection urged is that the court failed to qualify such duty with the words "use ordinary care." This objection, though mostly technical, when the whole charge is considered, could have been readily removed if counsel had called the attention of the court to it specifically. Not having done so, the general exception can be of no avail on appeal.

It is also urged that the court erred in the admission of certain testimony. The witnesses Blackmire and Miner, after their qualification and familiarity had been shown, were examined concerning the usual and proper method of loading such boilers, and the usual and common appliances in general use in the prosecution of such work. This class of testimony was objected to as immaterial. Upon careful examination of the evidence with reference to the issues presented by the pleadings, we are of the opinion that this objection was not well taken. We are likewise of the opinion that the material facts in proof on the subject were sufficiently stated in the hypothetical questions to render those questions

free from the objection of immateriality. "Hypothetical questions to an expert witness may be framed either upon all the facts in the case or upon any part of the facts assumed to be true which is sufficient in itself." 8 Enc. Pl. and Prac., 755; Sterns v. Field, 90 N. Y. 640; Medill v. Snyder, 61 Kan. 15, 58 Pac. 962; Yardley v. Cuthbertson, 108 Pa. 395, 1 Atl. 765, 56 Am. Rep. 218; Morrisett v. Wood, 123 Ala. 384, 26 South. 307, 82 Am. St. Rep. 127; Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311.

There are other questions presented, but we do not deem them of sufficient importance to require separate discussion. We find no reversible error in the record.

The judgment is affirmed, with costs.

BASKIN, J., and HART, District Judge, concur.